NOT FOR PUBLICATION

RECEIVED-CLERK
U.S. DISTRICT COURT

2004 JUL 30 P 12: 07

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
┌──────────────────────────────────────────┐
│                                          │
│  INTERNATIONALLY HOTT II,                │
│                                          │
│                 Plaintiff,               │
│                                          │
│  v.                                      │
│                                          │
│  CITY OF ELIZABETH, et al.               │
│                                          │
│                 Defendants.              │
│                                          │
└──────────────────────────────────────────┘
```

Civ. No. 96-1447 (WGB)

O P I N I O N

APPEARANCES:

Frank J. Cozzarelli, Esq.
Cozzarelli Law Firm, P.A.
Belleville, NJ 07109

        Attorney for Plaintiff

Rocco DiPaola, Esq.
CITY OF ELIZABETH, NEW JERSEY DEPARTMENT OF LAW
City Hall
50 Winfield Scott Plaza
Elizabeth, New Jersey 07201-2462

        Attorney for Defendant City of Elizabeth

Bassler, District Judge:

        Plaintiff Internationally Hott, II ("Plaintiff" or "Hott")

moves by Order to Show Cause to "Enforce Litigant's Rights" by

enforcement of its March 18, 1998 settlement ("Settlement") with

Defendant City of Elizabeth ("Defendant" or "the City").

Plaintiff seeks an order granting it final site plan approval for

the development of a nude restaurant and juice bar at 852-864

1

North Avenue East, Elizabeth, New Jersey. Plaintiff also requests appointment of a Special Master, counsel fees, as well as compensatory and consequential damages due to Defendant's alleged refusal to comply with the terms of the Settlement.

Oral argument was heard on April 5, 2004.

Although this Court explicitly retained jurisdiction to enforce the terms of the settlement agreement, see April 9, 1998 Stipulation of Settlement, Plaintiff's application is **dismissed** for lack of jurisdiction to the extent that Plaintiff seeks relief from the decision of the City of Elizabeth's Planning Board -- a non-party. The remainder of Plaintiff's motion is **denied**.

I.    **BACKGROUND**

A.    **The 1998 Settlement And Procedural History**

Plaintiff Internationally Hott II has been attempting since the late 1990s to open a nude juice bar in Elizabeth, New Jersey. Defendant City of Elizabeth first prevented Plaintiff from opening a nude juice bar at 1213 Magnolia Avenue. On March 27, 1996, Plaintiff filed a complaint in this Court challenging on First and Fourteenth Amendment grounds the City's public indecency ordinance governing nude dancing (City Ordinance 2361 in Chapter 66 of the Code of the City of Elizabeth). Plaintiff also claimed the 1995 amendments to the New Jersey Statute 2C:34-2, which added among other new provisions 2C:34-7, were

2

unconstitutional as applied to Plaintiff.[1]

By Opinion and Order filed March 31, 1997, the Court granted Plaintiff partial summary judgment, finding that Ordinance 2361 was unconstitutionally overbroad on its face and void for vagueness.  Thus, the Court issued a permanent injunction prohibiting the City from civilly or criminally enforcing Ordinance 2361 or cooperating with others to enforce this Ordinance.

With respect to the state law at issue, this Court ruled that the New Jersey Statute, including the 1995 amendments, was constitutional on its face.  (See April 9, 1997 Opinion and Order.)  The Court nevertheless determined that a genuine issue of material fact existed as to whether an adequate percentage of land was available in the City to accommodate Plaintiff's protected activity (expressive nude dancing).  (See id. at 18.)

Finally, in April 1998, and without the Court ever reaching the merits of the issue regarding whether adequate space was

---

[1]    In general, 2C:34-2 defines obscenity for persons 18 years of age or older; 2C:34-3 defines obscenity for persons under 18; 2C:34-7 restricts the location of sexually oriented businesses.  More specifically, 2C:34-7 provides that sexually oriented businesses must not be operated within 1,000 feet of any existing sexually oriented business, or any place of worship, school, playground, place of public recreation, hospital, day care center or any area zoned for residential use.  2C:34-7 also provides for 50 foot perimeter buffer zones and restrictions on the identification signs of sexually oriented businesses.  2C:33-12.2 defines sexually oriented businesses.

available for Plaintiff's protected activity, Plaintiff and the
City of Elizabeth agreed to a Stipulation of Settlement.  This
Stipulation states that the terms of the settlement agreement
were "placed on the record in open Court on March 18, 1998" and
that the certified transcript describing those terms was
incorporated by reference into the Stipulation.  The relevant
portion of the transcript states as follows:

> There will be an opinion letter issued from
> the office of the City attorney indicating
> that due to the exceptional circumstances of
> this case, and that language will be in the
> letter, neither the municipal zoning <u>use</u>
> restrictions in their M-1 or M-2 zones nor
> the 50-foot buffer requirement, the perimeter
> buffer requirement, in the 1995 amendments to
> the 2(c)34 can be enforced against
> Internationally Hott II or its assignees
> should they try to locate in one of the
> locations described in the reports and
> deposition testimony of Mr. Fred Heyer and
> Dan [sic] Travisano who identified locations
> on behalf of the City during discovery.
>
> . . .
>
> . . . this Court, with the agreement of the
> parties, will maintain continuing
> jurisdiction so that with respect to any
> opening of a business in a permitted
> location, any licenses, permits, certificates
> of occupancy or other municipal court
> decisions connected with that opening or
> operation will be handled by the Township
> employees in a constitutional manner without
> retaliation or discrimination or undue delay
> and in good faith.

(March 18, 1998 Tr. attached as Ex. A to February 10, 2004
Certification of William Pepe ("Pepe Cert. I") at 5:12-25, 6:2-

4

11.) (emphasis added).

During the March 18, 1998 placement of the Settlement on the record, the Court clarified that it would not retain jurisdiction over any "new cause of action having nothing to do with the terms of the settlement," but that if there arose "a gray area as to whether something that could be done within the municipality is in violation of the settlement," then the Court would "straighten that out i[f] that happens." Id. at 6:17-9:20.

In October 2002, Plaintiff filed an Order to Show Cause to enforce the Settlement. The issue before the Court was whether or not Plaintiff's new proposed location for its nude restaurant and juice bar, 852-864 North Avenue East ("the Premise"), was within one of the locations contemplated by the 1998 Settlement. The Court granted Plaintiff's motion to enforce the Settlement. In doing so, the Court stated in pertinent part:

> While the Court does find that the Settlement includes 852-864 North Avenue East as a potentially available location for Hott's bar, Hott must still comply with the City of Elizabeth's municipal regulations governing the issuance of building permits and site plan[2] approval. Hott must therefore submit

---

[2]   A site plan is statutorily defined as follows:

"Site plan" means a development plan of one or more lots on which is shown (1) existing and proposed conditions of the lot, including but not necessarily limited to topography, vegetation, drainage, flood plains, marshes and waterways, (2) the location of all existing and proposed buildings, drives,

5

> the appropriate applications before the City
> must decide whether to grant final permission
> for the opening of the bar.

(November 21, 2002 Opinion and Order, at 16.) (footnote added).

During the hearing on the Order to Show Cause, the Court again specifically acknowledged that it was not dictating to the City what its normal site plan review should be, but that if a claim were to later arise that the City was "jerking" Plaintiff around with the site plan application, the question of whether this Court had retained jurisdiction on such a dispute would be "sorted out" at that later time. (November 18, 2002 Tr. attached as Ex. A to May 3, 2004 Certification of Frank J. Cozzarelli ("Cozzarelli Cert. II") at 38:18-39:6.)

**B.    Denial of Bulk Variances**

The Premise consists of a one story building and parking area. Approximately one-half of the building is presently occupied by a truck and auto parts retail store. The remaining rear of the structure is proposed to be used as the nude restaurant and juice bar. The Premise currently has 35 parking

---

> parking spaces, walkways, means of ingress
> and egress, drainage facilities, utility
> services, landscaping, structures and signs,
> lighting screening devices and(3) and other
> information that maybe reasonably required in
> order to make an informed determination
> pursuant to an ordinance requiring review and
> approval of site plans by the planning
> adopted pursuant to article 6 of this act.

N.J.S.A. 40:55D-7 (footnote omitted).

6

spaces and no on-street parking.

Pursuant to the November 21, 2001 Opinion and Order, which required Plaintiff to comply with the City's municipal regulations regarding building permits and site plan approval, T&B Club 9 ("T&B")[3] filed an application with the City of Elizabeth Planning Board ("Planning Board") on or about March 24, 2003, requesting site plan approval and other bulk variances.[4]

―――――――――――――――――

[3]     T&B received an assignment of rights from Hott and was thereby included in the Settlement by the terms of the Stipulation.

[4]     N.J.S.A. 40:55D-70(d), which gives to the zoning board of adjustment the power to grant use variances, provides in pertinent part:

> (d) In particular cases and for special reasons, grant a variance to allow . . . (1) a use or principal structure in a district restricted against such use or principal structure, . . .
> No variance or other relief may be granted under the terms of this section, . . . without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance. . . .

In addition to a use variance, N.J.S.A. 40:55D-70(c) gives the board of adjustment the power to grant what is called a bulk or dimensional variance:

> (1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation

(Pepe Cert. I at ¶¶ 5-7; February 10, 2004 Affidavit of Frank J. Cozzarelli, Esq. ("Cozzarelli Aff. I") at ¶¶ 4-5.)  Specifically, T&B sought bulk variances regarding the requisite number of parking spaces, rear yard set back, minimum lot size, maximum building coverage, and set back of the parking area.

By letter dated April 10, 2003, the Planning Board advised that the application would be listed on the Planning Board agenda for May 1, 2003.  (Cozzarrelli Aff. I at Ex. A.)  The matter was then carried to July 10, 2003.  (Id. at Ex. B.)  The matter was

---

> uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship; . . .

(footnote omitted).  Pursuant to N.J.S.A. 40:55D-60, a planning board also has the power to grant bulk variances:

> Whenever the proposed development requires approval pursuant to this act of a subdivision, site plan or conditional use, but not a variance pursuant to subsection d. of section 57 of this act (C. 40:55D-70), the planning board shall have the power to grant to the same extent and subject to the same restrictions as the board of adjustment:
> a. Variances pursuant to subsection 57c. of this act; [N.J.S.A. 40:55D-70] . . .

N.J.S.A. 40:55D-60.

8

again carried by the Planning Board until August 21, 2003.  (Id.
at Ex. C.)  The Planning Board finally listed the matter for its
September 25, 2003 meeting,[5] where, after hearing testimony from
T&B's professional engineer, the Planning Board voted to deny
T&B's application.  This denial was memorialized and approved at
a meeting of the Board held on November 6, 2003.  (Planning Board
Resolution ("Resolution") attached as Ex. J to Cozzarelli Aff.
I.)

     As set forth in the Resolution, the Planning Board found
that T&B had failed to meet the minimum requirements under the
Municipal Land Use Law, as set forth in N.J.S.A. 40:55D-1, et
seq. to justify the parking and other bulk variances.  In
reaching its decision, the Planning Board noted in part that,
William Pepe ("Pepe"), on behalf of the applicant, testified that
perhaps 150 to 200 patrons would be attending the nude restaurant
and juice bar on a Saturday night.  The Board found that T&B had
made absolutely no proffer of evidence as to how parking would be
managed to accommodate this number of patrons given that on—
street parking is not permitted and on-site parking only provides
35 parking spaces for patrons, staff, and entertainers.  (Id. at
7.)  Moreover, the Board observed that the applicant had failed

--------------------------------------------------

[5]     The parties dispute the cause of the various
adjournments in the hearing date.  According to Plaintiff, all
adjournments were at the discretion and election of the
municipality.  In contrast, Defendant claims that the delays were
due to various deficiencies in T&B's application.

to address how the parking demand could be resolved if the nude restaurant and juice bar were open for lunch business when the auto parts store, in the front of the building, was also open for business.  (<u>Id.</u>)  Accordingly, in denying the numerous variances sought by T&B, the Board stated:

> [e]ven if the applicant was to be granted the other bulk variances with regard to pre-existing conditions as it pertains to the pre-existing conditions regarding required rear yard lot size, building coverage and parking area setbacks from the street lines and property lines, the absence of adequate parking and the near total absence of any testimony before the Board, either in written or oral form, to justify such a glaring lack of adequate parking, cannot be overlooked. It is the burden of the applicant to present adequate testimony before the Board to meet the statutory criteria.  The applicant has not done so.

(<u>Id.</u> at 10.)

T&B did not challenge the Planning Board's decision by an action in lieu of prerogative writ to the Superior Court of New Jersey pursuant to N.J. Ct. Rule 4:69-1, <u>et seq</u>.  Rather, Plaintiff, by way of a motion to enforce settlement, now looks to this Court to enter an order:  granting its final site plan approval; adding the Planning Board as a defendant; directing the City of Elizabeth to issue all necessary permits; appointing, at the City's expense, a Special Master to supervise the City's actions with respect to the construction inspection process; enjoining the City of Elizabeth from interfering in any way in

10

permitting, constructing, and completing Plaintiff's project; and awarding Plaintiff counsel fees, costs, and compensatory and consequential damages.

## II.  DISCUSSION

### A.    The Planning Board Decision

In its initial moving brief, Plaintiff claims that the Planning Board imposed the wrong number of required parking spaces and that the bulk variances it sought were for pre-existing conditions that presumably conformed to zoning ordinances applicable when the building was constructed, and were therefore, never even required in the first instance pursuant to N.J.S.A. 40:55D-68.[6]  Thus, Plaintiff maintains that the Planning Board's denial of Plaintiff's site plan application was "irrational," "arbitrary, capricious, and unreasonable," and therefore "contrary to the spirit and intent" of the Settlement. See Pl's Br. in Support of Application to Enforce Litigant's Rights ("Pl.'s Br.") at 12-13.  The City's response is that the previous use of the Premise from a car rental agency and garage to a nude juice bar constitutes a change in use that requires not only site plan approval, but also bulk variances.  See Land Development Control Ordinance § 40-71(B)(2)(a) attached as Ex. A

---

[6]    N.J.S.A. 40:55D-68 states in pertinent part: "Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof."

to April 16, 2004 Certification of Victor Vinegra ("Vinegra Cert. II"); Land Development Control Ordinance Schedule II attached as Ex. B to Vinegra Cert. II.

Plaintiff also asserts that the Planning Board failed to act within the statutory time limitation and therefore, site plan approval is deemed granted as a matter of law.  The City, however, disputes that the actions of the Planning Board were untimely; its position is that there was no "default" approval of the site plan application.

The Court is unable to reach the merits of Plaintiff's contentions because Plaintiff has not met its burden of proving to this Court that it has subject matter jurisdiction to hear this aspect of the current dispute.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement, . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."); Latimer v. City of Philadelphia, 1997 WL 48943, *1 (E.D. Pa.) (noting that settlement agreement is a contract governed by state law and that party asserting jurisdiction over enforcement of settlement agreement has the burden of proving as much).

Plaintiff's allegation that the Planning Board's decision was "arbitrary, capricious and unreasonable" is a challenge to

the Planning Board's denial of the bulk variances.[7]  See Medici v. BPR Co., 107 N.J. 1, 15 (1987) (noting that the standard by which a local zoning determination will be reviewed and set aside is if the decision is "arbitrary, capricious or unreasonable.") Similarly, Plaintiff's effort to challenge the Planning Board's decision on the basis that site plan approval should be granted by operation of law due to the Planning Board's alleged failure to act on the site plan application within the statutory time limitation is properly the subject of an action in lieu of prerogative writ brought in state court.

Adjudication of municipal actions or zoning board and planning board decisions are accomplished by actions in lieu of

---

[7]    In suggesting that the Planning Board's decision was in fact more than arbitrary, capricious and unreasonable, but also a result of a deliberate effort to keep Plaintiff from opening the nude juice bar, Plaintiff claims that sometime in 2000, the City's mayor, Mayor Bollwage, stated to Pepe, a partner in Internationally Hott II, "I don't care what we agreed to, I don't care what Judge Bassler says, I will never allow that place to open, I will fight you at every turn."  February 10, 2004 Certification of William Pepe ("Pepe Cert. I") at ¶ 20.  The City has not provided an affidavit contradicting that that statement was made by Mayor Bollwage.  If true, it is indeed disturbing to this Court that the Mayor would have such disregard for the judicial system.  The Mayor is obligated to obey the laws just as this Court must.

Nonetheless, the alleged statement by the Mayor is not necessarily evidence that the Planning Board did not act independently.  Even if, as Plaintiff suggested during oral argument, that the Mayor sat on the Planning Board, the Mayor's comment is not sufficient evidence to show that the Planning Board acted improperly or erroneously by requiring Plaintiff to obtain site plan approval.

prerogative writs, governed by N.J. Ct. Rule 4:69-1, _et seq._  The proper venue for such actions is the New Jersey Superior Court, Law Division.  Moreover, the Court has previously explained that it would not examine any off-site parking, lighting, ramp, or other decisions by the City regarding "the normal type of legitimate [site plan] review."  November 18, 2002 Tr. at 38:18-25.

Thus, notwithstanding Plaintiff's captioning of the present application as one to enforce settlement, this Court has no jurisdiction to consider the merits of Plaintiff's claims that the Planning Board's decision to impose a greater number of parking spaces and to deny the bulk variances was "arbitrary, capricious and unreasonable" or that approval of the site plan should be granted by operation of law.  Plaintiff's application with respect to those claims is therefore **dismissed** for lack of jurisdiction.

### B.    **Enforcing Settlement**

#### 1.    **Settlement Terms**

Plaintiff also maintains in its initial brief that pursuant to the terms of the Settlement, it was relieved of the obligation to comply with bulk variance requirements because its only obligation under the Court's November 21st ruling was to comply with regulations governing the issuance of building permits and site plan approval.  Pl's Br. in Support of Application to

14

Enforce Litigant's Rights ("Pl.'s Br.") at 14; see Pl's Br. at 15
("[t]he settlement reached with the City contemplated that the
plaintiff would comply with site plan regulations").  In so
arguing, Plaintiff ignores the fact that obtaining any necessary
variances is a prerequisite to obtaining site plan approval and
building permits.

Further, as noted above, the crux of the Settlement
addressed restrictions with respect to use:  "neither the
municipal zoning use restrictions in [the City's] M-1 or M-2
zones nor the 50-foot buffer requirement, the perimeter buffer
requirement, in the 1995 amendments to the 2(c)34 can be enforced
against Internally Hott II or its assignees should they try to
locate in one of the locations" contemplated by the Settlement.
March 18, 1998 Tr. attached as Ex. A to Pepe Cert. I at 5:16-22.
(emphasis added).  Contrary to Plaintiff's suggestion, no part of
the Settlement provides that the City (or the City's Planning
Board, which is not a party to this litigation, see discussion
infra), would effectively waive all of the applicable land use
ordinances that Plaintiff would otherwise have to satisfy in
order to secure approval for its nude restaurant and juice bar.
Again, while the City agreed not to enforce certain zoning use
restrictions that prohibited a nude juice bar, the City of
Elizabeth, as part of the Settlement, never waived Plaintiff's
obligation to obtain any necessary bulk variances or otherwise

relinquished the Planning Board's responsibility to ensure that final approval for opening of the bar was warranted based on the applicant's compliance with Elizabeth's Land Development Control Ordinance.

Indeed, this Court would never have approved of a settlement agreement that exempted Plaintiff from complying with applicable land use regulations. In fact, the Court's November 21, 2002 Opinion clearly recognizes that Plaintiff "must still comply with the City of Elizabeth's municipal regulations governing the issuance of building permits and site plan approval" and accordingly, must "submit the appropriate applications before the City must decide whether to grant final permission for the opening of the bar." November 21, 2002 Opinion, at 16.

The relief sought by Plaintiff is not contemplated by the terms of the Settlement. Also fatal to Plaintiff's motion to enforce settlement is the critical jurisdictional fact that Plaintiff seeks relief against the Planning Board, which was not a party to the original litigation or the subsequent Settlement. A planning board is an entity distinct from the governing body of a city, see Lehrhaupt v. Flynn, 140 N.J. Super. 250, 268 (App. Div. 1976) aff'd, 75 N.J. 459 (1978), and is the sole entity with the power to grant site plan approval. See N.J.S.A. 40:55D-25; see also N.J.S.A. 40:55D-20. Therefore, the Court has no authority to enforce a settlement agreement against the Planning

16

Board.

Although included in Plaintiff's motion to enforce settlement is a cursory request that the Court add the Planning Board as a defendant, Plaintiff has not filed a motion for joinder of that party pursuant to Fed. R. Civ. P. Rule 19. Further, even if Plaintiff had filed the appropriate motion, Plaintiff has not addressed the issue of whether and under what authority this Court can add a new party to a closed case for purposes of enforcing a settlement agreement against an entity that was never a party to the settlement agreement.

Finally, to the extent that Plaintiff is alleging deprivation of substantial property and Constitutional rights as a result of the Planning Board's denial of its application for bulk variances, such claims have no bearing on the Settlement. The Settlement simply affords Plaintiff <u>potential</u> locations for its nude restaurant and juice bar notwithstanding the City's municipal zone restrictions as to use.  Therefore, claims against the Planning Board for the alleged illegal denial of bulk variances constitute new causes of action for which Plaintiff must institute a new lawsuit.[8]  <u>See</u> March 18, 1998 Tr. at 8:18-20.

---

[8]    The Court's ruling in no way should be viewed as passing on the merits of any constitutional claims against the Planning Board.

### 2.   Discrimination[9]

Plaintiff argues for the first time in its reply brief that although it had to comply with site plan regulations, pursuant to the City's own ordinance, Elizabeth Land Development Control Ordinance Code § 40-71(D)(2), it was exempt from plan approval[10]; Plaintiff thus claims that the City should have approved its application administratively without the need for a hearing before the Planning Board.  Plaintiff concludes that the site plan approval hearing was used only as a pretext for discrimination.

Section 40-71(D)(2) states:

> Development shall be exempt from site plan review requirements where:
>
> (2) Development is encompassed by § 40-

---

[9]   The Court retained jurisdiction to ensure that the <u>City employees</u> behave in a "constitutional manner without retaliation or discrimination or undue delay and in good faith" regarding "licenses, permits, certificates of occupancy".  March 18, 1998 Tr. at 6:2-11.  As noted above, the Planning Board is not an employee of the City but constitutes an entity independent from the governing body.  <u>See Lehrhaupt</u>, 140 N.J. Super. at 268.

[10]   According to William Pepe, he was told by Marta Rivera, the Principal Planning Aide/Boards Clerk for the City, and Michael Mazza, a building sub-code official for the City, that they believed his application should be handled administratively. Pepe Cert. I at ¶ 6.  Mr. Mazza, however, states that after discussing Plaintiff's application with Victor Vinegra, the City's Planner, they concluded that Plaintiff needed to obtain Planning Board approval because of the intended change of use. April 12, 2004 Certification of Michael Mazza ("Mazza Cert.") at ¶ 6.

71B(2)[11] of this ordinance and wherein
existing and proposed physical site
improvements have been certified by the City
Engineer, the City Planner, and the City
Zoning Administrator as being in conformance
with the requirements of this ordinance, and
changes are limited to:

> (a)  An increase in the number of
>       parking stalls of not more than ten
>       (10) spaces or twenty-five percent
>       (25%) of the existing total spaces,
>       and/or
>
>   . . .
>
> (d)  Fencing, and/or
>
> (e)  Landscaping, and/or
>
> (f)  Exterior site lighting, . . .
>
> (g)  Signage in conformance with Master
>       Plan standards.

Land Development Control Ordinance § 40-71(D)(2) (footnote

added).

Here, the existing and proposed physical site improvements

have not been certified by the City Engineer, the City Planner,

and the City Zoning Administrator as being in conformance with

the requirements of the ordinance.  Indeed, as determined by the

Planning Board, the City contends that in addition to existing

non conformities that violate the zoning requirements as to

minimum lot area, maximum building coverage, and minimum setbacks

from the street and parking area, the proposed use did not

_____

[11]    See infra for text of § 40-71(B)(2).

conform to the minimum zoning requirements for parking.  Hence, the Court finds that it was reasonable for the City to determine that Plaintiff was not exempt from site plan approval.[12]

Nonetheless, Plaintiff maintains that it was not required to apply for site plan review, and that the City's discrimination against it is evidenced by the fact that Mr. Choa Fallah, the owner of the auto parts supply store existing on the other half of the Premise, was not required to obtain site plan approval. When Mr. Fallah purchased the Premise, it was an abandoned and vacant building, which had once been used as a car rental agency and garage that he then converted to a retail truck and automobile parts business.  April 26, 2004 Certification of Choa Fallah ("Fallah Cert. II") at ¶ 3.  In securing the necessary approvals, Mr. Fallah did not have to apply for site plan approval or obtain variances for the existing conditions.  Id. at ¶ 7-8.  Instead, the City handled the matter administratively and issued Mr. Fallah a Zoning Certificate that stated that because the proposed use was permitted in the Manufacturing, Research,

_____

[12]    Plaintiff claims that the Fire Marshal's requirement that Plaintiff have a fire lane in the parking area was not supported by reference to any regulation or standard, but rather, was an arbitrary determination.  Even if Plaintiff's allegation is true, it does not negate the fact that Plaintiff was not exempt from site plan review.  Moreover, even assuming that the Fire Marshal is a City employee and that the Fire Marshal's determination was incorrect, it is an insufficient basis for the Court to find discrimination by the City.

and Commercial ("MRC") zone,[13] no conditions applied.  <u>Id.</u> at ¶¶
6-10, Ex. C.  According to Plaintiff, because Mr. Fallah, despite
the same existing conditions on the Premises, was allowed to
change the use from "no use, or the use as a car rental agency,
to a retail truck parts store," a change in use does not trigger
formal site plan review before the Planning Board.  Plaintiff
concludes that this standard must be uniformly applied to all
uses within the zoning district.

In response, the City points out that site plan approval of
the retail truck parts store was not required under § 40-71(B)(2)
of the Land Development Control Ordinance because there was no
change in use.  That ordinance states in pertinent part:

> Site plan approval required.  Any owner of
> land within the City of Elizabeth shall,
> except as hereinafter provided, obtain final
> approval of a site plan pursuant to Section
> 40-76 of this ordinance for development
> involving either:
>
> . . .
>
> (2)  Development which entails the following:
>
>      (a)  <u>A change of use from one schedule
>           II category to another on a lot
>           which exceeds eighty (80) feet in
>           width</u>; or
>
>      (b)  Construction or reconstruction or a
>           building or building addition which

---

[13]    The retail truck parts store fell within item #5 in
Schedule ID as a permitted use in the MRC zone.  <u>See</u> Schedule ID
attached as Ex. A to Supplementary Certification of Frank J.
Cozzarelli, Esq. ("Cozzarelli Supp. Cert.").

> covers more than three hundred
> (300) square feet of lot area; or
>
> (c)   Establishment, alteration, or
>       elimination of stalls, aisles, or
>       driveways comprising a parking area
>       for five (5) or more vehicles; or
>
> (d)   Fill or removal of soil exceeding
>       one (1) foot in depth; or
>
> (e)   Provision of five thousand (5,000)
>       square feet or more of required
>       open space.

(emphasis added).  According to the City, the change from a
vacant car rental agency and garage to a retail truck parts store
was not a change in use from one Schedule II category to another.
Both the car rental agency and garage as well as the retail truck
parts store are auto-related services under section W of Schedule
II.  See Schedule II attached as Ex. B to Vinegra Cert. II.  As
the City notes, for zoning and land use purposes, the use of the
Premise did not necessarily change from car rental agency to an
abandoned property by the mere vacancy of the building.
Plaintiff does not allege that there was any other intervening
change in use.  Therefore, because there was no evidence of a
change in use, site plan approval of the retail truck parts store
appears not to be required under § 40-71(B)(2) of the Land
Development Control Ordinance.[14]

_____

[14]   As discussed above, no change in use triggered the need
for site plan approval under § 40-71(B)(2).  Therefore, there was
presumably no need for the retail truck parts store to be
specifically exempt from site plan review under Land Development

22

Nevertheless, even assuming that the City did not require the retail truck parts store to strictly comply with its land use regulations, the Court is not convinced that this single item of evidence demonstrates constitutionally impermissible discriminatory conduct by the City nor, as Plaintiff suggests, other developments with a change in use must be uniformly exempt from site plan review. Cf. Greenway Homes v. Borough of River Edge, 137 N.J.L. 453 (N.J. Supreme Ct. 1948) (finding that evidence that another developer was permitted to proceed without strict compliance with frontage requirement was not sufficient to persuade court that further exceptions should apply which would effectively nullify the ordinance).

Accordingly, Plaintiff's motion to enforce settlement is **denied.**

## III. CONCLUSION

For the reasons noted above, to the extent that Plaintiff disagrees with the decision of the Planning Board because it was allegedly arbitrary, capricious and unreasonable, that claim must be adjudicated by an action in lieu of prerogative writ in the state court. The Court has no subject matter jurisdiction to adjudicate that issue. That portion of Plaintiff's application is therefore **dismissed** for lack of jurisdiction.

The remainder of Plaintiff's application to enforce the

---

Control Ordinance § 40-71(D)(2).

settlement is **denied**. Neither the settlement agreement with the City nor the Constitution gives Plaintiff the blanket right to open its business without complying with applicable land use regulations and obtaining the appropriate site plan approvals. Additionally, the Court cannot enforce settlement against the Planning Board which was never a party to the underlying litigation or to the settlement agreement. Moreover, on a motion to enforce settlement, the Court cannot entertain new causes of action against a non-party. Lastly, although Plaintiff asserts that if this Court were to deny it relief, it would effectively deprive it of the benefit of its Settlement with the City and deprive it of substantial property and Constitutional rights, Plaintiff has failed to show that the City discriminated against it.

Plaintiff's request for counsel fees, for appointment of a Special Master and for compensatory and consequential damages is **denied**.

An appropriate Order follows.

/s/ WILLIAM G. BASSLER
U.S.D.J.

DATED: May 28, 2004

24